UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GERALD KIRBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-01087-TWP-MJD |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Gerald Kirby ("Mr. Kirby") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

### I. BACKGROUND

**A. Procedural History**

On December 31, 2010, Mr. Kirby filed an application for DIB, alleging disability beginning on June 30, 2010. His claim was denied initially on March 21, 2011, and again upon reconsideration on April 8, 2011. Mr. Kirby filed a written request for hearing on April 13, 2011. Administrative Law Judge ("ALJ") Joel G. Fina held a video hearing on December 14, 2011. James M. McKenna, M.D. ("Dr. McKenna"), a medical expert, and James Breen, a vocational expert, also participated in the hearing. Attorney Michael G. Myers represented Mr. Kirby. The ALJ denied Mr. Kirby's application on March 19, 2012. The Appeals Council denied Mr. Kirby's

request for review of the ALJ's decision on April 3, 2013, making it the final decision of the Commissioner for purposes of judicial review. Mr. Kirby now seeks review of that decision.

**B.      Factual Background**

At the time of his alleged disability onset date, Mr. Kirby was 50 years old. For the past fifteen years, he had worked as an electrician. Although he had two small gaps in earnings, Mr. Kirby has a long and consistent work history beginning in 1976, when he was sixteen years old, until mid-2009 when he had a heart attack. Although he attempted to return to work as an electrician, he was unable to perform the job due to shortness of breath and other difficulties. He now limits his activities to some driving, shopping, cooking, dishwashing, and short walks. Mr. Kirby suffers from symptoms relating to coronary artery disease, diverticulosis, hypertension, gastroesophageal reflux disease, neck and back pain, anemia, hyperlipidemia, and depression.

At the Administration's request, Nina Dereska, M.D. ("Dr. Dereska") personally examined Mr. Kirby on March 1, 2011. Mr. Kirby alleged disability because of chronic back pain, coronary artery disease, arthritis, and shortness of breath. He told Dr. Dereska that he had immobility in his neck and sometimes needed to walk with a cane. On the one hand, Mr. Kirby exhibited a normal gait, he had no difficulty getting on and off the examination table, he could tie his shoe by pulling his foot toward him, he had no tenderness or muscle spasm in his spine, he had no muscle wasting or atrophy, and an examination of his lungs and chest was normal. On the other hand, Mr. Kirby displayed decreased range of motion in his cervical and lumbar spine, shoulders and hips. Also, he could only walk on his heels and toes briefly, he could only stand on his left leg alone briefly because of hip pain, and he was unable to perform a full squat. Dr. Dereska noted that arthritis and chronic back pain affected Mr. Kirby's ability to sit, stand, and walk, opining that he could only sit for 15-30 minutes, stand for 15 minutes, walk short distances with occasional use of a

cane, lift 10 pounds, no overhead lifting, and he must avoid postural movements. These limitations were very similar to Mr. Kirby's subjective report of his own limitations.

On March 19, 2011, J. Sands, M.D. ("Dr. Sands") completed a physical assessment indicating that he believed Mr. Kirby could work at a much higher level than what Dr. Dereska believed he could do. Dr. Sands believed that Mr. Kirby could perform at a light exertional level, allowing him to stand, walk, or sit for 6 hours in an 8-hour workday, occasionally climb ramps or stairs, and balance, stoop, kneel, crouch, and crawl; however, he could not climb ladders, ropes, or scaffolds, work with machinery, or work around wet, slippery, or uneven surfaces. Although Dr. Sands stated that Mr. Kirby's description of his own symptoms were credible, he explicitly noted that he did not agree with the entirety of Dr. Dereska's opinion. Fernando Montoya, M.D. reconsidered and affirmed Dr. Sands' assessment.

Dr. McKenna testified at Mr. Kirby's hearing as a medical expert. Having reviewed all of the record evidence, Dr. McKenna testified that Mr. Kirby had insignificant narrowing in his coronary arteries (less than 40%) and no progression of his coronary disease. He testified that Mr. Kirby showed superb exercise capacity on three different stress tests, had good ejection fraction, and excellent myocardial function. However, Dr. McKenna noted that he did not have good imaging on Mr. Kirby's back and that it was a confusing issue. He also noted that Mr. Kirby had restricted motion in his cervical spine. Dr. McKenna opined that Mr. Kirby could lift 10 pounds frequently, but could lift 20 pounds only occasionally, that he should avoid ladders, ropes, or scaffolds, and that he should not work in extreme cold or environmental irritants. Furthermore, Dr. McKenna stated that Dr. Dereska drew her conclusion without the benefit of several treadmill tests that cast doubt on her opinion.

During the hearing, Mr. Kirby testified that he did not believe that he could work five days a week for eight hours a day because of neck and back pain, shortness of breath, and diverticulitis. Furthermore, he testified that he could only sometimes sit for five minutes at a time. During the hearing, Mr. Kirby complained of pain located in his lower back, neck, and heart, which stemmed from a previously broken back, a car accident that injured his neck and collarbone, and his heart attack and coronary artery disease. He testified that his activities are limited to simple household chores and occasional driving and walking. However, the ALJ found that the medical evidence did not fully support his description of the magnitude of his symptoms and limitations and was inconsistent with the complete inability to sustain full-time work activity.

## II. DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If a claimant has physical or mental limitations that prevent him or her from maintaining gainful employment in the national economy, the claimant is disabled. 42 U.S.C. § 423(d)(2)(A).

There is a five-step process to determine whether a person is disabled. At step one, the Commissioner analyzes whether the claimant is engaged in substantial gainful activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled, no matter what the person's medical condition is. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the Commissioner moves to the next step. At step two, the Commissioner analyzes whether the claimant has a "severe" impairment, meaning one that significantly limits his or her ability to perform basic work activities that meets the durational

requirement. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment, then the claimant is not disabled. If the claimant does have a severe impairment, the Commissioner moves to the next step.

At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that is in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant has an impairment that meets one of these specific types of impairments, then the Commissioner automatically declares the claimant disabled. But if the claimant's impairment does not fall into one of those types of impairments, the analysis continues.

In order to analyze steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [his or her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, the Commissioner analyzes whether the claimant is able to perform past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can, he or she is not disabled. If the claimant cannot, the Commissioner moves on to the next step. At step five, the Commissioner analyzes the claimant can perform any other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

This Court must uphold the ALJ's findings of fact if they are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. This Court may not reweigh evidence or substitute its judgment for

that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Although the Court reviews the ALJ's opinion deferentially, the Court cannot uphold an ALJ's decision that "fails to mention highly pertinent evidence" or "fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 797 F.3d 920, 921 (7th Cir. 2010).

The ALJ does not need to evaluate every piece of testimony or evidence. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the ALJ must consider all of the relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is only required to articulate a minimal, but legitimate, justification for accepting or rejecting specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

First, the ALJ determined that Mr. Kirby met the insured status requirements of the Act through December 31, 2014. At step one, the ALJ found that Mr. Kirby had not engaged in substantial gainful activity since June 30, 2010, which was the alleged onset date. At step two, the ALJ found that Mr. Kirby had the following severe impairments: coronary artery disease; diverticulosis; hypertension; and gastroesophageal reflux disease. The ALJ also found that Mr. Kirby had several non-severe impairments: neck and back pain, anemia, hyperlipidemia, and depression. At step three, the ALJ found that Mr. Kirby did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Mr. Kirby had the RFC to perform light work, including lifting up to twenty pounds occasionally, lifting or carrying ten pounds frequently, walking for approximately six hours per eight-hour workday, sitting for approximately six hours per eight-hour workday, and frequent balancing, stooping, crouching, kneeling, crawling, or climbing up ramps or stairs. However, the ALJ concluded that Mr. Kirby

must never climb long ladders, ropes, or scaffolds, and must avoid long exposure to extreme cold and pulmonary irritants such as fumes, odors, dusts, and gasses. At step four, the ALJ determined that Mr. Kirby could not do any of his past relevant work. At step five, the ALJ found that, considering Mr. Kirby's age, education, work experience, and RFC, Mr. Kirby can do a significant number of jobs that exist in the national economy.

## IV. DISCUSSION

Mr. Kirby raises two issues in his appeal that he claims constitute reversible error. First, he argues that the ALJ erred in giving the opinion of Dr. Dereska, Mr. Kirby's treating physician, little weight because he gave "little to no reasoning" for this decision and failed to consider the necessary factors for giving a non-treating physician's opinion more weight than a treating physician's opinion. Second, Mr. Kirby argues that the ALJ ignored evidence favorable to his claim. The Court finds both of these arguments insufficient to overturn the ALJ's decision.

**A.     The ALJ articulated sufficient reasons for giving little weight to the opinion of the treating physician.**

The ALJ gave the opinion of Dr. Dereska, Mr. Kirby's treating physician, "little weight" because it was (1) "inconsistent with the medical evidence" and (2) "based on a one-time evaluation." [Filing No. 12-2, at ECF p. 32](). Mr. Kirby argues that the ALJ erred by giving "little to no reasoning" for this decision and not considering the "checklist" of factors listed in 20 C.F.R. § 404.1527(c). However, the Court record shows that the ALJ sufficiently articulated reasons for giving little weight to Dr. Dereska's opinion and satisfied the requirements of 20 C.F.R. § 404.1527(c).

The Social Security Administration adopted 20 C.F.R § 404.1527 to regulate the consideration of medical opinions when determining whether a person is disabled. Under the regulation, the ALJ must consider every medical opinion it receives, "regardless of its source." 20

7

C.F.R § 404.1527(c). Generally, the ALJ must give more weight to the opinion of a physician who treated the claimant than the opinion of a physician who did not treat the claimant. 20 C.F.R § 404.1527(c)(1). This is because treating physicians are often able to provide a "detailed, longitudinal picture" of the claimant's medical condition and a "unique perspective" to the medical evidence that a non-treating physician would not have. 20 C.F.R § 404.1527(c)(2). Because a treating physician often has special insight into the nature and severity of the claimant's medical condition, the ALJ gives controlling weight to the treating physician's opinion if it is well-supported by medical findings and consistent with substantial evidence in the record. *Id*.

When the ALJ does not give the treating physician's opinion controlling weight, the ALJ must determine how much weight to give it. *Id.* In making this determination, the ALJ considers (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of medical evidence supporting the treating physician's opinion; (4) the consistency of the treating physician's opinion with the rest of the record; (5) whether the treating physician is a specialist; and (6) any other factor that supports or contradicts the treating physician's opinion. 20 C.F.R § 404.1527(c)(2)(i)-(c)(6). After considering these factors, the ALJ must give "good reasons" for the level of weight he or she gives to the treating physician's opinion. 20 C.F.R § 404.1527(c)(2). However, the ALJ does not have to explicitly discuss and analyze the entire checklist of factors in the opinion. An ALJ only needs to "minimally articulate" his or her reasons for discounting a treating physician's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). This standard is "lax" and "very deferential" to the ALJ's determination. *Id*. (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Here, the ALJ's opinion meets this lax and deferential standard because he articulated two justifications for giving Dr. Dereska's opinion little weight, both of which address the required

checklist of factors. The ALJ gave little weight to Dr. Dereska's opinion because it was (1) "inconsistent with the medical evidence" and (2) "based on a one-time evaluation." Filing No. 12-2, at ECF p. 32.

The first reason—inconsistency with other medical evidence—addresses the third and fourth factors of the analysis, and it weighs against entitling the treating physician's opinion more weight. There is ample evidence in the record justifying the ALJ's conclusion that Dr. Dereska's opinion was inconsistent with other medical evidence. First, Dr. McKenna testified at the hearing that Dr. Dereska's evaluation of Mr. Kirby's low back pain was a "symptom based assessment," which Dr. Dereska made without the benefit of Mr. Kirby's treadmill tests. Filing No. 12-2, at ECF p. 64. According to Dr. McKenna, Mr. Kirby would not have been able to perform on a treadmill as he did with severe limiting back pain. Second, Dr. Sands stated in his Physical RFC Assessment of Mr. Kirby that Dr. Dereska's evaluation was "significantly different" from his own findings. Filing No. 12-8, at ECF p. 67. Finally, the record indicated that the symptoms of Mr. Kirby's impairments were manageable with medication and lifestyle changes. With respect to Mr. Kirby's coronary artery disease, Woodrow Corey, M.D. ("Dr. Corey") noted in July 2011 that Mr. Kirby was "doing well, not having any chest pain, but having some fatigue and dyspnea." Filing No. 12-2, at ECF p. 30. Dr. Corey recommended that Mr. Kirby adopt a healthy lifestyle, quit smoking, increase his activity, and continue medication. Concerning Mr. Kirby's diverticulosis, Ajay Jain, M.D., FRCPC, noted in October 2010 that one Levbid tablet daily helped significantly with his abdominal pain, and an August 2011 CT Urogram detected no inflammatory changes when compared to a July 2010 CT of Mr. Kirby's abdomen and pelvis. Filing No. 12-2, at ECF p. 31. Mr. Kirby's hypertension was controlled with medication, and his blood pressure was 116/64 in September 2011. Mr. Kirby reported that his acid reflux condition improved after he

had a Nissen fundoplication, which is a surgical procedure used to treat reflux patients. With regard to Mr. Kirby's shortness of breath, Ronald Burwinkel, M.D. prescribed Mr. Kirby a Symbicort trial and advised him never to smoke again, but was relatively unconcerned. For all of these reasons, it was reasonable for the ALJ to conclude that Dr. Dereska's opinion was contrary to the medical evidence on record.

The second reason—an opinion based on a one-time evaluation—addresses the first two factors of the analysis, and it also weighs against giving the treating physician's opinion more weight. Because Dr. Dereska based her opinion on a one-time evaluation, the treatment relationship did not have the length, frequency, or extent to develop a "detailed, longitudinal picture" of Mr. Kirby's medical condition. 20 C.F.R. § 404.1527(c)(2). The purpose of presuming that a treating physician's opinion is more valuable than a non-treating physician's opinion stems from the unique perspective that a treating physician gains over the course of a long-term and frequent one-on-one treating relationship. When the treating relationship consists only of a one-time evaluation, the claimant must demonstrate why the one-time evaluation gives the treating physician special insight into the claimant's medical condition. Without this unique perspective, the presumption of favoring a treating physician's opinion over a non-treating physician's opinion loses its force. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). For this reason, the Court finds a one-time evaluation to be a sufficient reason for not giving the opinion of a treating physician more weight than a non-treating physician.

Furthermore, Mr. Kirby does not point to any specific evidence showing that the ALJ misapplied the checklist of factors. Although Mr. Kirby's brief cites several cases in which courts

reversed or remanded because of an ALJ's failure to apply the checklist of factors, those cases pointed to evidence suggesting that the outcome would have been different had the ALJ applied those factors. In *Larson v. Astrue*, 615 F.3d 744 (7th Cir. 2010), for example, the court reversed an ALJ's finding that the claimant was not entitled to SSI benefits. *Larson*, 615 F.3d at 752. The claimant, who suffered from anxiety and depression, argued that the ALJ erred by not giving controlling weight to the opinion of her long-term treating psychiatrist. *Id*. at 745. The ALJ found the contrary opinion of a non-treating psychologist more persuasive. *Id* at 748-49. The court agreed with the claimant, holding that the ALJ did not give sufficient reasons for his decision to not give the opinion of the treating psychiatrist's controlling weight. *Id*. at 751. It criticized the ALJ for entitling the treating physician's opinion to "some weight," but saying "nothing" regarding the checklist of factors supporting this decision. *Id*. The court also stated that the ALJ should have given the treating physician's opinion more weight because the treatment relationship was on a monthly basis for several years, the treating physician was a psychiatrist rather than a psychologist, and the treating physician's opinion was consistent with the medical evidence in the record. *Id*.

However, in the present case, Mr. Kirby has not pointed to any evidence suggesting that a reconsideration of the factors would change the outcome of the ALJ's decision. Mr. Kirby argues that the ALJ's alleged failure to support his decision to give Dr. Dereska's opinion proper weight is contrary to law and that the case must be remanded so that factors listed in 20 C.F.R. § 404.1527(c)(2) may be properly considered. Dr. Dereska only examined Mr. Kirby one time, whereas the treating physician in *Larson* examined the claimant on a monthly basis for several years. In *Larson*, the treating physician was a psychiatrist and the non-treating physician was a psychologist, but there is no evidence in the record that Dr. Dereska is a specialist. And in *Larson*,

11

the Seventh Circuit found the treating physician's opinion to be consistent with the medical record. However, as stated above, there was ample evidence supporting the ALJ's finding that Dr. Dereska's opinion was inconsistent with the medical record. Thus, the Court concludes that the weight given to Mr. Kirby's treating physician was not reversible error.

**B.      The ALJ did not ignore substantial contrary evidence in his credibility determination of Mr. Kirby's testimony.**

Mr. Kirby also argues that the ALJ erred because he improperly discredited Mr. Kirby's testimony by ignoring evidence that bolstered Mr. Kirby's credibility. The Court is not persuaded because none of the evidence Mr. Kirby cites amounts to reversible error. The ALJ provided reasonable factual support for his credibility determination. Furthermore, the ALJ did not ignore any substantial contrary evidence.

The ALJ must make a credibility determination based on the entire case record when objective medical evidence does not substantiate a claimant's subjective statements regarding the intensity, persistence, or functionally-limiting effects of his or her symptoms. SSR 96-7p; 20 C.F.R. § 404.1529(c)(4). The ALJ must consider (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) factors that create and intensify the symptoms; (4) the medication that the claimant takes; (5) non-treatment measures the claimant uses to relieve symptoms; and (6) any other factors concerning functional limitations caused by the symptoms. SSR 96-7p; 20 C.F.R. § 404.1529(c)(3).

Credibility determinations are primarily factual determinations, which the Court will overturn only if there is no support in the record for the ALJ's determination and the ALJ is "patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). Unless the determination is unsupported or unreasonable, the Court will give the ALJ's determination "considerable deference." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). The Court will not engage

in a *de novo* review of the medical evidence; rather, it will only assess whether the ALJ's decision was "reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The Court finds that the ALJ provided reasonable support for his credibility determination. The ALJ found that the record medical evidence did not support Mr. Kirby's description of the severity and extent of his own symptoms. The radiographic and clinical evaluations did not reveal totally debilitating pathology. Mr. Kirby's cardiac catheterizations showed good ejection fractions. Mr. Kirby had excellent exercise capacity. The ALJ also noted that Mr. Kirby continues to smoke cigarettes on a regular basis, despite repeated medical advice to quit. Finally, Mr. Kirby's household chores and daily activities suggested that his symptoms were not as severe as he claimed. All of this evidence establishes a reasonable and well-supported finding that Mr. Kirby was exaggerating the severity of his symptoms.

Furthermore, the ALJ did not ignore any substantial contrary evidence. The thrust of Mr. Kirby's argument is that the ALJ failed to discuss evidence that weighed in Mr. Kirby's favor. Mr. Kirby is correct that the ALJ must consider all of the evidence in the record and discuss significant contrary evidence. *Stein v. Sullivan*, 892 F.2d 43, 47 (7th Cir. 1989) (*citing Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988)). However, the standard of review is quite low. The Court will not be a "rubber stamp" of approval, allowing the ALJ to cherry-pick evidence that supports his or her conclusion. *Id*. (*quoting Burnett v. Bowen*, 830 F.2d 731, 734 (7th Cir. 1987)). But the ALJ only needs to "articulate at some minimum level his [or her] analysis of the evidence in cases in which considerable evidence is presented to counter the agency's position." *Id*. (*citing Ray*, 843 F.2d at 1002).

Mr. Kirby's argument is unpersuasive because it does not establish any significant contrary evidence that the ALJ failed to discuss. First, Mr. Kirby argues that the ALJ ignored Dr. Sands'

statement that Mr. Kirby's claims regarding his own symptoms were credible, even though the ALJ gave Dr. Sands' opinion "great weight." [Filing No. 12-2, at ECF p. 33](). However, Dr. Sands concluded that Mr. Kirby had a higher RFC than the one the ALJ ultimately assigned to Mr. Kirby. Dr. Sands also opined that Mr. Kirby could perform work at a light exertional level. [Filing No. 12-2, at ECF p.33](). But when the ALJ considered the medical record and Mr. Kirby's testimony, he gave Mr. Kirby "some benefit of the doubt" and adopted a lower RFC, finding that Mr. Kirby could only perform light work. [Filing No. 12, at ECF p. 32](). Dr. Sands' statement that Mr. Kirby's claims were credible cannot be substantial contrary evidence to the ALJ's opinion when Dr. Sands' ultimate conclusion was less favorable to Mr. Kirby than the ALJ's conclusion. Furthermore, Dr. Sands only claimed that Mr. Kirby's description of his symptoms to Dr. Dereska were credible. The ALJ based his credibility determination on Mr. Kirby's statements made to Dr. Dereska and his testimony at the hearing.

Second, Mr. Kirby argues that the ALJ mischaracterized Mr. Kirby's testimony, believing that Mr. Kirby claimed he was completely unable to "sustain full-time work activity," when Mr. Kirby actually only alleged he was limited to sedentary work. [Filing No. 12-2, at ECF p. 32](). However, the ultimate finding of the ALJ was that Mr. Kirby's subjective description of his symptoms conflicted with the objective medical evidence. Although an ALJ may not ignore the claimant's testimony, "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). As stated above, the ALJ provided a great deal of support for his conclusion that there was a divergence between Mr. Kirby's subjective report and the objective medical evidence. In making that determination, it was not of paramount importance whether the

14

ALJ thought Mr. Kirby was alleging that he was limited to sedentary work or whether the ALJ thought Mr. Kirby was alleging that he could not perform any full-time work activity.

Third, Mr. Kirby argues that the ALJ improperly used his ability to do simple and occasional household chores as a basis for determining that he was able to work fulltime outside the home, ignoring the fact that these activities were painful and infrequently performed. Mr. Kirby is correct to argue that, in and of itself, this is not substantial evidence undermining Mr. Kirby's testimony. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). However, the ALJ did not rely solely on this evidence. Rather, the ALJ provided several reasons for his credibility determination, and much of it was objective medical evidence. Filing No. 12-2, at ECF p. 32. *See Powers*, 207 F.3d at 435 (credibility determination upheld where it was based on a "variety of facts and observations"). Again, the ALJ came to a reasonable and well-supported conclusion that Mr. Kirby's subjective report of his symptoms conflicted with the objective medical evidence. The Court will defer to that determination.

Finally, Mr. Kirby argues that the ALJ failed to discuss his long work history, which bolsters Mr. Kirby's credibility. However, a favorable work history is just one of several factors that determines credibility, and it does not entitle a claimant to a presumption of credibility. *Jones v. Apfel*, 234 F.3d 1273 (7th Cir. 2000) (citing *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)). Furthermore, the ALJ does not need to discuss every piece of evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). As long as the ALJ builds an accurate and logical bridge between the evidence and the conclusion, the reviewing court will defer to the ALJ's decision. *Id.* (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000)). Although Mr. Kirby's long work history weighs in favor of his credibility, it does not substantially affect the ALJ's determination that Mr. Kirby's description of his own symptoms conflicted with objective medical record evidence. The

ALJ's discussion of the medical evidence created a logical bridge to his credibility determination. Because that finding was reasonable and well supported, the Court will avoid reweighing evidence and defer to the ALJ's credibility determination.

## V. CONCLUSION

For the reasons stated in this opinion, the Court **AFFIRMS** the final decision of the Commissioner.

**SO ORDERED.**

Date: 9/30/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael G. Myers
mgmyers10@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov